Mark Mausert
NV Bar No. 2398
Sean McDowell, Esq.
NV Bar No. 15962
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
sean@markmausertlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RACHELLE QUTOB,<br><br>Plaintiff,<br><br>vs.<br><br>LUCKY BEAVER, LLC,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW Plaintiff, through counsel, and hereby complains of Defendant, Lucky Beaver, LLC. (hereinafter, "Defendant"), via this Complaint and Jury Demand as follows:

<u>Jurisdiction, Venue & Jury Demand</u>

1. Plaintiff is a woman and is a resident of California. All, or almost all, acts, statements, communications, and omissions alleged herein occurred in northern Nevada, i.e., in or about Stateline, NV. Plaintiff hereby requests a jury trial relative to all issues so triable. Plaintiff has obtained a Notice of Right to Sue from the Equal Employment Opportunity Commission, dated February 10, 2026, i.e., Plaintiff has exhausted administrative remedies in accord with federal law. This Complaint and Jury Demand is timely filed in accordance with the Notice of Right to Sue which accompanies this Complaint and Jury Demand and is incorporated herein.

2. Defendant is a limited liability company, corporation, partnership, or some other legal entity which employed Plaintiff from approximately February 22nd, 2024, until approximately September 3rd, 2025, at which time Plaintiff left the employ of Defendant via a constructive discharge. At all relevant times, Defendant employed at least fifteen (15) employees for at least twenty weeks per year. Defendant maintains a business in Stateline, Nevada, where Plaintiff was previously employed.

3. This Court has venue over this action because all, or almost all, acts, communications, statements, and omissions alleged herein occurred in northern Nevada; Defendant does substantial business in northern Nevada, e.g., it maintains a place of business in Stateline, Nevada, at which all or almost all, acts, statements, and omissions which form the basis for this lawsuit occurred. Therefore, this Court has venue pursuant to 42 U.S.C. § 2000e-5(f)(3).

4. This court has jurisdiction over this matter as Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, i.e., 42 U.S.C. § 2000e, et seq. Subject Matter jurisdiction is invoked pursuant to 28 U.S.C. § 1343. Jurisdiction exists because Plaintiff is a woman who alleges she was subject to gender/sex-based harassment; and was forced to Constructively Discharge her employment in violation of Title VII. Plaintiff alleges she was harassed "because of sex" as defined by Title 42, and that she was subject to retaliation in violation of Title VII, and the Family and Medical Leave Act i.e., constructive discharge because of Defendant's failure to provide Plaintiff with a work environment free from sexual hostility and/or termination while Plaintiff was on Medical Leave in or about August of 2025. Plaintiff was qualified for her position and performed her job satisfactorily until she constructively discharged on or about September 3rd, 2025.

## First Cause of Action
(Title VII Sexual Harassment/Sexually Hostile Work Environment)

5. Plaintiff hereby incorporates all allegations of paragraphs 1 through 4, inclusive, as well as all other paragraphs herein, as though the same were fully stated.

6. During most or all of Plaintiff's employment, Plaintiff was subjected to sexually

harassing conduct by Mr. Michael Lepper, Defendant's Owner. Mr. Leeper would sexually harass Plaintiff regularly, i.e., multiple times per week. Mr. Leeper would make comments about Plaintiff's body and appearance, blatantly leer at Plaintiff in a sexual manner, ask Plaintiff about her sex life, etc. Mr. Leeper would also physically touch Plaintiff. Mr. Leeper would hug Plaintiff nearly every time he saw her, place his hand on Plaintiff's lower back in a sensual manner, etc. Mr. Leeper would arrange to be on property alone with Plaintiff while Plaintiff was working late at the Restaurant. During these occasions, Mr. Leeper would close the office door to be alone with Plaintiff in a confined space with no egress. Mr. Leeper would become intoxicated on the property and request Plaintiff drive him home. On one occasion in January of 2025, Mr. Leeper became so intoxicated Plaintiff had to drive Mr. Leeper home. During the drive, Mr. Leeper caressed Plaintiff's ear and placed his hand on her thigh. Plaintiff tried to move away from Mr. Leeper but was limited by the confines of the car.

7. Mr. Leeper's sexual harassment/discrimination as defined by Title VII is not limited to his conduct towards Plaintiff. Mr. Leeper would openly use homophobic slurs such as "fag" or "faggot". Mr. Leeper would use these homophobic slurs multiple times per week. Mr. Leeper would further make disparaging comments to pregnant employees. Mr. Leeper would instruct Plaintiff to remove shifts from, and/or terminate homosexual and pregnant employees. Plaintiff objectED to Mr. Leeper's orders but was unsuccessful in convincing Mr. Leeper to withdraw his discriminatory instructions.

8. Defendant further maintained a highly sexual environment. Defendant's Instagram page contains images of barely dressed women, sexual innuendo, references to pornographic films, and other sexually explicit content. Defendant would host events where it would hire exotic dancers who would dance on the bar and engage in highly sexually suggestive acts and displays. Defendant posts images from these events on its Social Media pages as well.

9. Plaintiff's work environment was rendered hostile and offensive by repeated and prolonged exposure to sexually foul and abusive music, i.e., "hiphop" or "rap" music. The

content of the music which Defendant routinely allowed to be loudly played was incredibly foul and offensive. For instance, women were routinely referred to as “hoes” (slang for “whore”), bitches, and “c__ts”. The songs contained extraordinarily graphic and sexually foul content. Defendant permitted employees, managers, and customers to routinely and loudly play this type of music in its work environment. Defendant allowed and encouraged this type of music to be played by allowing uncensored access to a “Touch Tunes” jukebox which used the restaurant’s PA system to broadcast music. The music of which Plaintiff complains did not customarily, or ever, emanate from radio stations regulated by the Federal Communications Commission (FCC). Plaintiff would hear songs such as “Wet Ass Pussy” by Cardi B in the workplace.

10. Defendant received notice on a daily, or near daily basis, of the fact misogynistic and/or sexually offensive music was being openly played in its work environment. Defendant received such notice by virtue of the music itself. That is, on a regular basis, Defendant had a number of managers present in the subject workplace, and those managers, including Mr. Leeper could hear the lyrics of the music, or would play the music themselves. That is, Defendant’s managers knew, and had to have known, songs with obscene and otherwise very sexually offensive and misogynistic lyrics were being loudly and frequently broadcast in Defendant’s work environment. By allowing obscene music to be routinely and frequently broadcast, Defendant guaranteed its work environment would be offensive “because of sex” especially the average hypothetical reasonable woman, and relative to most of its women employees. Plaintiff herself was offended by the music. Defendant disseminated a written policy and made various formulaic statements which purported to prohibit its employees from sexual harassment and/or sexual hostility such as sexually offensive music, but nonetheless routinely allowed conduct to occur which directly flouted its written and verbal promises to employees, to the effect they would be protected from sexual hostility. Defendant failed to take meaningful and consistent action to halt the music and otherwise fulfill its promise of a work environment free of sexual hostility. Part and parcel of the hostility Plaintiff experiences was defendant’s protracted refusals to investigate

and remedy the playing of sexually offensive music in its work environment.

11. Plaintiff was employed by Defendant as Defendant's General Manager. Plaintiff reported directly to Mr. Leeper. Plaintiff regularly complained to Mr. Leeper about the sexual harassment she and other employees were subjected to as described herein, including complaining about the content of the music. Mr. Leeper would ignore Plaintiff's complaints or react with hostility towards Plaintiff. Accordingly, Plaintiff was unable to use her authority as General Manager to affect any change in the work environment.

12. Mr. Leeper would subject Plaintiff to further sexual harassment/hostility by using his superior size and strength to intimidate Plaintiff and make her feel small while screaming at her while standing close enough to Plaintiff he would spray spittle on Plaintiff's face. On or about June 29th, 2025, Mr. Leeper berated Plaintiff and had his hands in Plaintiff's face. The June 29th, incident was a breaking point for Plaintiff. Mr. Leeper's sexual hostility and the sexual hostility allowed to permeate Plaintiff's work environment became more than she could bear and caused her to begin experiencing complications with her emotional health. Plaintiff went on a leave of absence on or about July 11th, 2025. In August of 2025, Plaintiff learned she had been replaced through coworkers telling Plaintiff someone had been promoted into her position, and through Defendant's payroll system which verified what Plaintiff had heard from coworkers. Plaintiff then constructively discharged on or about September 3rd, 2025, because it was unclear to Plaintiff whether she had been terminated or not, and she concluded the work environment had become so hostile she could no longer continue her employment with Defendant.

13. Any diminution, deficiency, mistakes, lapses, violations of policy, etc. which Plaintiff engaged in, and/or allegedly engaged in are hereby alleged to have been proximately caused or to have proximately resulted from sexual workplace hostility which Defendant permitted via a consistent failure to investigate and then remedy Mr. Leeper's sexually offensive conduct, statements, and/or retaliatory hostility. Defendant engaged in such failures despite knowing of Mr. Leeper's sexually offensive workplace statements and/or conduct. Further, Defendant was

under a duty of inquiry, pursuant to 42 U.S.C. § 2000e, et seq., to timely and thoroughly investigate so as to determine how Mr. Leeper's course of sexual hostility may have adversely affected Plaintiff, and especially Plaintiff's work performance – and then to consider this information in a reasonable manner, pursuant to Title VII prior to implementing any discipline against Plaintiff. Defendant is therefore equitably estopped from relying upon any such deficiencies, mistakes, lapses, etc., so as to legitimize any adverse employment actions which were directed at Plaintiff, and in particular the termination of Plaintiff's employment. The failures to investigate how Plaintiff may have been adversely affected by Mr. Leeper's protracted course of sexual harassment, followed by the failure to consider such possible adverse effects as excusing and/or mitigating any suspected deficiencies, lapses, etc. attendant to Plaintiff's work performance were themselves acts of sexual harassment and/or retaliatory hostility. Further, Plaintiff reasonably apprehended deficiencies, lapses, etc. resulting from sexual hostility she experiences per Mr. Leeper's course of sexual harassment would not be considered by Defendant as a justification and/or excuse – so as to prevent her from being disciplined, and/or to serve to mitigate the level of discipline. This knowledge reasonably and predictably increased the intensity of the emotional distress, apprehension, feeling of helplessness, etc. which Plaintiff experienced and suffered as a proximate result of working in a sexually hostile environment.

14. As a direct and proximate result of being subject to a sexually hostile work environment, Plaintiff suffered emotional distress, loss of enjoyment of life, fear, anger, humiliation, loss of sleep and anxiety. It has been necessary for Plaintiff to incur costs and retain counsel to attempt to vindicate her right to a workplace free from sexual hostility, gender-based hostility, and retaliatory hostility.

<u>Second Cause of Action</u>
(Retaliation)

15. Plaintiff hereby incorporates all allegations of paragraphs 1 through 14, inclusive, as well as all other paragraphs herein, as though the same were fully stated.

16. Plaintiff hereby alleges being replaced in August of 2025, was a termination of her

employment in retaliation for complaining of the sexually hostile work environment leading to her leave of absence which began on or about July 11th, 2025.

17. Plaintiff further alleges if her position being replaced in or about August of 2025, was not a termination of her employment, a reasonable woman, similarly situated to Plaintiff would have found the work environment intolerable. Plaintiff did so experience the work environment as intolerable and was wrongfully and constructively discharged on or about September 3rd, 2025.

18. The actual and/or constructive discharge of Plaintiff's employment constituted retaliation, as prohibited by Title VII of the Civil Rights Act of 1964, i.e., 42 U.S.C. § 2000e et seq.

19. As a direct and proximate result of being subject to retaliation, Plaintiff was injured and damaged as described herein, has lost wages/income, and has been compelled to incur costs and retain counsel.

WHEREFORE, Plaintiff requests the following relief:

1.) For an award of compensatory damages;

2.) For an award of punitive damages sufficient to punish and deter Defendant from engaging in similar conduct;

3.) For an award of special or actual economic damages according to proof;

4.) For an award of costs and reasonable attorney's fees;

5.) For injunctive relief to compel Defendant to adopt and actually enforce a reasonable policy against sexual harassment and/or discrimination; and

6.) For any further relief the Court or Jury may deem just.

DATED this 11th day of May, 2026.

*__/s/ Mark Mausert__*
Mark Mausert
NV Bar No. 2398
Sean McDowell
Nevada Bar No. 15962
729 Evans Avenue
Reno, NV 89512
*Attorneys for Plaintiff*

## INDEX OF EXHIBITS

February 10, 2026 EEOC Issued Notice of Right to Sue…………...……………………….Exhibit 1